IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIM DUNLAP,** | 04-CV-950-BR |
|       Plaintiff, | OPINION AND ORDER |
| v. | |
| **FRED MEYER STORES, INC.,** | |
|       Defendant. | |

**DAVID J. HOLLANDER**
Hollander, Lebenbaum & Gannicott
1500 S.W. First Avenue
Suite 700
Portland, OR  97201
(503) 222-2408

      Attorneys for Plaintiff

**DAVID WILSON**
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway
Suite 1900
Portland, OR  97205
(503) 248-1134

      Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Second Motion for Summary Judgment (#63), Plaintiff's Renewed Motion to Strike Declaration (#67), and Plaintiff's Motion for Partial Summary Judgment (#71) which the Court construes as a Motion for Reconsideration.  For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Renewed Motion to Strike Declaration, and, having reconsidered its earlier rulings regarding preemption and jurisdiction, **ADHERES** to its previous rulings and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff Kim Dunlap is currently employed as a replenisher in Defendant Fred Meyer Stores, Inc.'s warehouse in Clackamas, Oregon.  Throughout his employment with Defendant, Plaintiff has been represented by Teamsters Local 206 and has worked under the Collective Bargaining Agreement (CBA).

On May 24, 2002, Plaintiff injured his back while working in Defendant's warehouse and filed for Workers' Compensation benefits.  On August 12, 2002, Plaintiff had back surgery.  On October 21, 2002, Plaintiff's doctor released him to return to work with substantial restrictions on the type of work Plaintiff

could perform. On November 15, 2002, Plaintiff began a temporary assignment in Defendant's "wellness room" for 20 hours per week.

On March 12, 2003, Plaintiff's doctor released him to work fairly limited jobs. On April 12, 2003, Deborah Newstrand, one of Defendant's Return-to-Work Managers, informed Plaintiff that his temporary assignment would end April 25, 2003, pursuant to the terms of Defendant's return-to-work policy.

On May 24, 2003, Defendant terminated Plaintiff's employment pursuant to § 4.10(f) of the CBA, which provides:

> 4.10 Reasons for Loss of Seniority. No employee who has acquired seniority shall lose seniority by reason of sickness or injury not to exceed one (1) year, unless further extended by mutual agreement. In cases of industrial accident, the provisions of state law shall apply. Otherwise employees shall lose all previous seniority, and their employment relationship shall be terminated only if they:
>
>     a.   Quit or retire. For purposes of this paragraph, an employee who walks off the job shall be deemed a voluntary quit.
>
>     b.   Are discharged for just cause.
>
>     c.   Are absent for two (2) or more consecutive days without notifying the Company of such absence.
>
>     d.   Are absent on layoff and do not return to work on the day specified by the Employer after receiving three (3) work days' notice of date of recall by certified mail or telegram at last known address.
>
>     e.   Are laid off for a period of six (6) months or more.
>
>     f.   Are off on industrial injury for a period of twelve (12) months.

3 - OPINION AND ORDER

    g. Are Floaters who fail to call for available work for two (2) consecutive days.

Plaintiff continued to receive full-time loss benefits after Defendant terminated his employment. On June 10, 2003, Plaintiff and the Teamsters Union filed a grievance against Defendant regarding Plaintiff's dismissal. On June 14, 2004, the arbitrator issued an opinion in which the arbitrator concluded Defendant violated the CBA when it terminated Plaintiff for being "off on industrial injury for a period of 12 months due to his light duty jobs through April, 2003." The arbitrator ordered Defendant to reinstate Plaintiff, to restore his seniority, and to pay Plaintiff back pay from the date he could have been re-employed through his actual reinstatement.

On July 14, 2003, Plaintiff had a second back surgery. Plaintiff's doctor released him to work at his former job of replenisher on July 21, 2004. After July 21, 2004, Defendant reinstated Plaintiff, restored his seniority, and paid him all of his back pay.

## PROCEDURAL BACKGROUND

On June 2, 2004, Plaintiff filed an amended complaint in Multnomah County Circuit Court alleging Defendant terminated his employment and failed to rehire him in violation of Or. Rev. Stat. § 659A.040 which provides an employer may not lawfully "discriminate against a worker with respect to hire or tenure or

4 - OPINION AND ORDER

any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures" of Oregon Workers' Compensation laws.

On July 14, 2004, Defendant removed the case to this Court on the ground that this Court has subject-matter jurisdiction because Plaintiff's claims are "inextricably intertwined with the CBA which governed his employment and cannot be decided without reference to and interpretation of the CBA to resolve differing interpretations of the controlling contract language."  Defendant asserted (1) the Court must interpret the CBA in order to resolve the case; (2) state law as it applies to Plaintiff's claims are preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a); and (3) this Court, therefore, has subject-matter jurisdiction over this action.  *See Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001).

On March 1, 2005, Defendant filed a Motion for Summary Judgment in which Defendant contended Plaintiff's claim for retaliation was without merit because the parties do not dispute Defendant fired Plaintiff based solely on a provision of the CBA.

In his Response to Defendant's Motion, Plaintiff conceded an arbitrator ordered Defendant to reinstate Plaintiff with back pay and that Defendant rehired Plaintiff in compliance with the arbitrator's order.  Plaintiff, therefore, requested the Court to dismiss his claim against Defendant for failure to rehire.  At

5 - OPINION AND ORDER

oral argument, the Court granted Plaintiff's request.

With respect to his retaliation claim, Plaintiff agreed Defendant terminated Plaintiff's employment based solely on § 4.10 of the CBA. Plaintiff, however, contended § 4.10 violates Or. Rev. Stat. § 659A.040 on its face because it allows Defendant to terminate only those individuals who are out of work on Workers' Compensation leave for more than one year, but not those individuals who are out of work on other types of medical leave for more than one year. Defendant, on the other hand, asserted it was entitled to summary judgment on the issue of retaliation because, despite the language of § 4.10, Defendant terminates all employees who are out of work for more than one year regardless of the reason.

In their initial briefing, the parties did not address the issue whether Plaintiff's state-law claim is preempted by § 301 of the LMRA. After reviewing the parties' filings and considering their arguments, however, the Court requested the parties to address specifically whether the Court has jurisdiction over the remaining claim in this case.

In response, Plaintiff contended at oral argument that the Court does not have subject-matter jurisdiction because the Court does not need to interpret any disputed provisions of the CBA to resolve Plaintiff's state-law claim. Thus, according to Plaintiff, his state-law retaliation claim is not preempted by

6 - OPINION AND ORDER

the LMRA, and there is not any basis for federal jurisdiction.

Defendant, however, argued (1) the issue at hand is inextricably intertwined with the language of the CBA; (2) the Court is required to interpret the CBA in order to decide the remaining issue in this case; (3) as a result, the LMRA preempts Plaintiff's state-law claim of retaliation; and (4) accordingly, this Court has subject-matter jurisdiction under the LMRA.

On October 20, 2005, the Court issued an Opinion and Order in which it concluded Plaintiff's state-law claim is preempted by § 301 of the LMRA and this matter is subject to mandatory arbitration.  Accordingly, the Court denied Defendant's Motion for Summary Judgment and stayed this matter pending binding arbitration.

On January 16, 2006, the parties filed a Joint Status Report in which they informed the Court that Plaintiff's union refused to process Plaintiff's grievance further.  In a letter, counsel for the union informed Plaintiff's counsel:

> [In the arbitration proceedings] Teamsters Local 206 argued that the termination of Kim Dunlap violated both the collective bargaining agreement between Teamsters Local 206 and Fred Meyer Stores and provisions of Oregon State Law (ORS 659(a).043) [sic].  Fred Meyer Stores argued that its termination of Kim Dunlap was lawful under Oregon State Law and was in accordance with the labor agreement.  The Arbitrator ruled that Fred Meyer Stores had violated the labor agreement . . . .  The Arbitrator also found no violation of State law by Fred Meyer Stores.
>
> The Arbitrator's award is final and binding.

7 - OPINION AND ORDER

> Teamsters Local 206 filed an action in federal court to enforce the Arbitrator's award. Ultimately, Kim Dunlap was made whole for all lost wages and benefits and seniority. The federal court action was dismissed with prejudice on February 14, 2005.
>
> The final and binding nature of the Arbitrator's award precludes re-litigating this dispute under the collective bargaining agreement grievance procedure.
>
> * * *
>
> More importantly, Mr. Dunlap has been reinstated and made whole . . . . There are no further remedies available to Mr. Dunlap under the collective bargaining agreement.
>
> It is the position of Teamsters Local 206 that any attempt to re-litigate the grievance . . . or any effort to initiate a new grievance concerning the 2003 termination would be futile.

On June 2, 2006, Defendant filed a Second Motion for Summary Judgment. On June 26, 2006, Plaintiff filed a Motion for Partial Summary Judgment in which Plaintiff requests the Court to reconsider its conclusions regarding preemption and jurisdiction.

### STANDARDS

**I.    Summary Judgment**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In

8 - OPINION AND ORDER

response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Easter v. Am. W. Fin.* 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No.1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of

a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## II. Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441, an action filed in state court may be removed to federal court if the federal court would have had original subject-matter jurisdiction over the action. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The removal statute is strictly construed, however, and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)(citations omitted). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.* (citations omitted).

To determine whether an action arises under federal law, a court generally must apply the "well-pleaded complaint rule." *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)(citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Under this rule, a claim arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Id.*

A corollary to the well-pleaded complaint rule is the

doctrine of complete preemption.  *Id*.  The complete preemption doctrine provides: "[O]n occasion . . . the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1215 (9th Cir.), *as amended by* 208 F.3d 1170 (9th Cir.), *cert. denied*, 531 U.S. 992 (2000).  If a federal claim completely preempts a state-law claim, any complaint that contains allegations within the scope of the federal claim necessarily "arises under" federal law for purposes of determining removal jurisdiction.  *Franchise Tax Bd. of the State of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983).

The court generally is limited to the face of the complaint when determining removability.  When a defendant asserts complete preemption as the basis for removal, however, the court may examine the defendant's removal notice and supporting affidavits to clarify whether the plaintiff presents a claim that, in fact, arises under federal law.  *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).

### **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff titles his Motion as one for Partial Summary Judgment, but in substance it is a request for the Court to

11 - OPINION AND ORDER

reconsider its decisions on preemption and jurisdiction in this matter. Plaintiff cites a number of cases to support his assertion that his state law claim is not preempted by the LMRA. These cases, however, are distinguishable.

In *Lingle v. Norge Division of Magic Chef, Inc.*, the plaintiff filed a worker's compensation claim, and the defendant then discharged the plaintiff for filing a false worker's compensation claim. 486 U.S. 399, 401 (1988). The plaintiff grieved her termination through her union, and an arbitrator ruled in the plaintiff's favor and ordered her reinstated with back pay. *Id*. at 402. The plaintiff filed an action in state court alleging the defendant discharged her for filing a worker's compensation claim in violation of state law. The defendant removed the matter to federal court on the ground of preemption under the LMRA. *Id*. The Supreme Court reviewed its earlier decisions in LMRA preemption cases and noted the following principle arising from those cases:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles - necessarily uniform throughout the Nation - must be employed to resolve the dispute.

*Id*. at 406. The *Lingle* Court concluded the plaintiff's claim was not preempted, however, because

> resolution [of] plaintiff's claim involved purely

12 - OPINION AND ORDER

>factual questions pertain[ing] to the conduct of
>the employee and the conduct and motivation of the
>employer.  Neither of the elements [of the
>plaintiff's claim] requires a court to interpret
>any term of a collective-bargaining agreement.  To
>defend against a retaliatory discharge claim, an
>employer must show that it had a nonretaliatory
>reason for the discharge; this purely factual
>inquiry likewise does not turn on the meaning of
>any provision of a collective-bargaining
>agreement.  Thus, the state-law remedy in this
>case is "independent" of the collective-bargaining
>agreement in the sense of "independent" that
>matters for § 301 pre-emption purposes:
>resolution of the state-law claim does not require
>construing the collective-bargaining agreement.

*Id.* at 407.

In *Ramirez v. Fox Television Station, Inc.*, the plaintiff sued her employer under state law alleging national origin discrimination.  998 F.2d 743 (9th Cir. 1993).  Because the plaintiff's employment was governed by a CBA, the defendant removed the action to federal court on the ground of preemption under the LMRA.  The Ninth Circuit, relying on *Lingle*, held the matter was not preempted because the CBA did not contain any provision regarding who would have to take sick time for jury service, and, therefore, plaintiff's claim "[did] not require consideration of the terms of any bargaining agreement." *Id*. at 749.

Similarly, in *Miller v. AT&T Network Systems*, the plaintiff sued his employer alleging discrimination based on physical handicap in violation of state law.  850 F.2d 543 (9th Cir. 1988).  The defendant removed the matter to federal court on the

13 - OPINION AND ORDER

ground of preemption under the LMRA because the plaintiff's employment and termination were governed by a CBA.  *Id*. at 545.  The Ninth Circuit held the matter was not preempted because the court could "uphold state rights without interpreting the terms of a CBA."  *Id*.

In contrast to the claims in *Lingle, Ramirez,* and *Miller*, here Plaintiff's claim rests directly on the language of the CBA.  Plaintiff contends the CBA itself violates Oregon law.  Resolution of Plaintiff's claim "turn[s] on the meaning of [a] provision of the [CBA]."  Accordingly, *Lingle, Ramirez*, and *Miller* are not applicable.

The circumstances here are similar to those in *Medrano v. Excel Corporation*.  In that case, the plaintiff sustained work-related injuries and filed two worker's compensation claims.  985 F.2d 230, 230 (2d Cir. 1993).  The plaintiff's employment with the defendant was governed by a CBA that provided:  "an employee shall lose his seniority for . . . a disability that the company cannot accommodate."  *Id*. at 231.  Because the plaintiff had medical restrictions that could not be accommodated by the defendant, the defendant applied the terms of the CBA and terminated the plaintiff's employment.  *Id*. at 230.  The plaintiff filed a complaint alleging wrongful discharge under state law and "argued that the provision of the CBA itself constituted discrimination in violation of [state law]."  *Id*.

14 - OPINION AND ORDER

The defendant alleged the plaintiff's claim was preempted by § 301 of the LMRA.  The court concluded the plaintiff's claim was not "sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of section 301." *Id*. at 233.  The court reasoned:

> The case before us today . . . is not a typical straightforward case alleging a retaliatory discharge in violation of [state law]. . . . [The plaintiff's] claim is indeed inextricably intertwined with a consideration of the terms of the CBA.  [The plaintiff] actually drew on the settlement provision of the CBA itself to establish a violation of [state law].  [The plaintiff's] claim is distinctive in that he alleged [the defendant] - by applying a specific provision of the CBA - discriminated against him . . . .  [The plaintiff] was essentially challenging the very legality of Article XVII, Section 11(F), of the CBA, which [the defendant] had faithfully applied and which was the basis for [the plaintiff's] termination.  [The plaintiff's] claim, without a doubt, is substantially dependent upon the meaning of a term of the CBA and its applicability in this case.

*Id*. at 233.  The *Medrano* court contrasted the facts of *Medrano* with those in *Lingle* and noted the plaintiff's state-law claim "was independent of the CBA because 'resolution of the state-law claim [did] not require construing the collective-bargaining agreement.'" in *Lingle*.  *Id*. at 234 (quoting *Lingle*, 486 U.S. at 407).  The court then reasoned:  "To the contrary, here . . . [the plaintiff's] claim clearly requires construing the CBA . . . .  What is disputed in this case is whether the *provision itself* was illegal or discriminatory."  *Id*. (emphasis in

15 - OPINION AND ORDER

original).  The *Medrano* court concluded the CBA must be construed to resolve the plaintiff's claim, and, therefore, the plaintiff's claim was preempted by § 301 of the LMRA.  *Id*. at 234.

Although decisions by the Second Circuit are not binding on this Court, the reasoning in *Medrano* is persuasive.  Here Plaintiff challenges the legality of § 4.10(f) of the CBA, and, as in *Medrano*, the Court cannot resolve Plaintiff's claim without construing the CBA.  Accordingly, the Court adheres to its earlier conclusion that Plaintiff's claim is preempted by § 301 of the LMRA and denies Plaintiff's Motion for Partial Summary Judgment to the extent Plaintiff requests the Court to alter its conclusion.

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant moves for summary judgment on the ground that this matter is preempted by § 301 of the LMRA, and, therefore, among other things, the Court has no authority to interpret the CBA or to re-litigate the arbitrator's decision because Plaintiff has not alleged a breach of the duty of fair representation.

In several opinions, the Ninth Circuit has applied Supreme Court precedent that, when the relationship between the parties is governed by a CBA that contains exclusive grievance and arbitration procedures, an employee may not maintain a claim against the employer under the CBA if the Union provided fair

representation. *See, e.g., Johnson v. U.S. Postal Serv.*, 756 F.2d 1461, 1467 (9th Cir. 1985); *Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1222 (9th Cir. 2000)(*per curiam*); *Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1447 (9th Cir. 1994); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164-65 (1983).

In *Vaca*, the Supreme Court held an employee must exhaust the remedies provided in the CBA before he may resort to judicial action with two exceptions: (1) when a union wrongfully refuses to process the employee's grievance, breaching its duty of fair representation or (2) when the employer's conduct amounts to repudiation of the contractual grievance procedures. 386 U.S. at 185.

To establish breach of the duty of fair representation, the union's actions "must be arbitrary, discriminatory, or in bad faith." *Id*. at 190. A union's decision not to pursue a grievance based on lack of merit is "considered an exercise of judgment" unless the plaintiff establishes bad faith or discrimination. *Stevens*, 18 F.3d 1447. "Unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985).

Here Plaintiff has not alleged either unfair representation

17 - OPINION AND ORDER

by his union or that Defendant repudiated the grievance procedures. Moreover, it is highly unlikely that Plaintiff could adequately allege either as Plaintiff's termination was fully grieved and Plaintiff has been reinstated with back pay. Plaintiff has not established either of the exceptions to the arbitration requirements of the CBA, and, therefore, he may not litigate his claim in this Court. *See Schalk v. United Parcel Serv., Inc.*, No. 05-275-JO, 2006 WL 1455611 (D. Or. 2006)(the plaintiff's union did not breach its duty of fair representation, and, therefore, the plaintiff could not bring a claim under § 301 in federal court).

Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## PLAINTIFF'S RENEWED MOTION TO STRIKE DECLARATION

Plaintiff moves to strike the Declaration of Cynthia Thornton. The Court, however, did not find it necessary to consider Thornton's Declaration in order to resolve the pending Motions. Accordingly, the Court denies as moot Plaintiff's Motion to Strike.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#63); **DENIES** Plaintiff's Renewed Motion to

18 - OPINION AND ORDER

Strike Declaration (#67); and, having reconsidered its earlier rulings regarding preemption and jurisdiction, **ADHERES** to its previous rulings and **DENIES** Plaintiff's Motion for Partial Summary Judgment. (#71).

    IT IS SO ORDERED.

    DATED this 5th day of October, 2006.

                                      /s/ Anna J. Brown

                                      ANNA J. BROWN
                                      United States District Judge